IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| Patricia D. Scott, ) | Civil Action No. 0:11-00910-MBS |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| Cedar Fair Entertainment Company ) | **ORDER AND OPINION** |
| and Cedar Fair Southwest, Inc., ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This matter arises out of an incident wherein Plaintiff Patricia D. Scott ("Plaintiff") suffered various personal injuries on March 24, 2008, while visiting Carowinds Amusement Park ("Carowinds") located on the border of Charlotte, North Carolina and Fort Mill, South Carolina. (ECF No. 1-1, p. 6.) Plaintiff alleges that the owners of Carowinds, Cedar Fair Entertainment Company and Cedar Fair Southwest, Inc. (collectively "Defendants"), failed to exercise reasonable care in providing for her safety while on their premises, which failure proximately caused her alleged injuries. (Id. at p. 7.) Plaintiff filed this action against Defendants alleging a state law claim for premises liability negligence. (ECF No. 1-1.)

This matter is before the court on Defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 26.) In response to Defendants' motion, Plaintiff contends that she has presented sufficient evidence of dangerous conditions created by Defendants, evidence that Defendants knew or had constructive notice of these dangerous conditions, and evidence that Defendants breached their duty to protect Plaintiff from these dangerous conditions. (See ECF No. 27, p. 10.) For the reasons set forth below, the court **GRANTS** Defendants' motion for summary judgment.

1

# I. RELEVANT FACTUAL AND PROCEDURAL HISTORY

Plaintiff visited Carowinds on March 24, 2008. (ECF No. 27-2, pp. 41-42.) While walking on the asphalt walkways within the park from one attraction to the next, Plaintiff tripped and fell to the ground, suffering various personal injuries. (Id. at 47-49.) At the location of Plaintiff's fall, the walkway was bordered by an elevated concrete pad, which supported an automatic teller machine ("ATM").[1] (ECF No. 1-1, p. 6.) Plaintiff alleges that she stumbled when her right foot hit the concrete pad and then fell when her left foot stepped in a pothole, with both actions contributing to her fall equally. (ECF No. 27-2, pp. 48-49.) After the accident, Plaintiff was transported to the Carowinds' first aid area where her injuries were treated initially. (Id. at p. 51.) As a result of the fall, Plaintiff alleges that she suffered injuries, including fractured fingers, a torn biceps, and a torn rotator cuff. (Id. at pp. 150-51.)

On March 14, 2011, Plaintiff filed an amended complaint alleging premises liability negligence against Defendants in the Court of Common Pleas for the York County, South Carolina. (ECF No. 1-1.) Defendants removed Plaintiff's state action to this court on April 18, 2011. (ECF No. 1.) Defendants then answered the amended complaint denying Plaintiff's claims on April 20, 2011. (ECF No. 11.) Thereafter, on April 11, 2012, Defendants filed a motion for summary judgment. (ECF No. 26.) Plaintiff filed opposition to Defendants' motion for summary judgment on April 30, 2012, to which Defendants filed a reply in support of summary judgment on May 11, 2012. (ECF Nos. 27, 30.)

---

[1] The ATM and concrete pad were depicted in photographs submitted by the parties as ECF Nos. 26-1, 26-2, 27-1, 30-1, and 30-2.

## II. LEGAL STANDARD AND ANALYSIS

A. <u>Standard</u>

1. <u>Summary Judgment</u>

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. <u>Anderson v. Liberty Lobby Inc.</u>, 477 U.S. 242, 248–49 (1986). A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the nonmoving party. <u>Newport News Holdings Corp. v. Virtual City Vision</u>, 650 F.3d 423, 434 (4th Cir. 2011).

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. <u>Perini Corp. v. Perini Constr., Inc.</u>, 915 F.2d 121, 123-24 (4th Cir. 1990). The non-moving party may not oppose a motion for summary judgment with mere allegations or denials of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(e); <u>see</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986); <u>Shealy v. Winston</u>, 929 F.2d 1009, 1012 (4th Cir. 1991). All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." <u>Anderson</u>, 477 U.S. at 249. "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." <u>Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.</u>, 53 F.3d 55, 62 (4th Cir. 1995). A party cannot create a genuine issue of material fact solely with conclusions in his or her own affidavit or deposition that are not

based on personal knowledge. See Latif v. The Community College of Baltimore, No. 08-2023, 2009 WL 4643890, at *2 (4th Cir. Dec. 9, 2009).

2. Negligence

To assert direct liability based on a negligence claim in South Carolina, a plaintiff must show that (1) defendants owed her a duty of care; (2) defendants breached this duty by a negligent act or omission; (3) defendants' breach was the proximate cause of her injuries; and (4) she suffered injury or damages. Dorrell v. S.C. DOT, 605 S.E.2d 12, 15 (S.C. 2004) (citation omitted). "Whether the law recognizes a particular duty is an issue of law to be determined by the court." Jackson v. Swordfish Inv., L.L.C., 620 S.E.2d 54, 56 (S.C. 2005) (citation omitted).

3. Invitees on Premises

South Carolina courts "recognize[ ] four general classifications of persons who come on premises: adult trespassers, invitees, licensees, and children." Sims v. Giles, 541 S.E.2d 857, 861 (S.C. Ct. App. 2001). South Carolina law applies different standards of care depending on whether the visitor is considered an "invitee," i.e., an invited (express or implied) business guest; a "licensee," i.e., a person not invited, but whose presence is suffered; a "trespasser," i.e., a person whose presence is neither invited nor suffered; or a child. Id. Generally, the jury determines whether an individual is a licensee, invitee, or trespasser. Nesbitt v. Lewis, 517 S.E.2d 11 (S.C. 1999).

"An invitee is a person who enters onto the property of another at the express or implied invitation of the property owner." Goode v. St. Stephens United Methodist Church, 494 S.E.2d 827, 831 (S.C. Ct. App. 1997). "Invitees are limited to those persons who enter or remain on land upon an invitation which carries with it an implied representation, assurance, or understanding that reasonable care has been used to prepare the premises, and make them safe

4

for their reception." Sims, 541 S.E.2d at 862 (citation omitted). The visitor is considered an invitee especially when he is upon a matter of mutual interest or advantage to the property owner. Parker v. Stevenson Oil Co., 140 S.E.2d 177, 179 (S.C. 1965); Landry v. Hilton Head Plantation Prop. Owners Ass'n, Inc., 452 S.E.2d 619, 621 (S.C. Ct. App. 1994). The law recognizes two types of invitees: the public invitee and the business visitor. Sims, 541 S.E.2d at 862. "A public invitee is one who is invited to enter or remain on the land as a member of the public for a purpose for which the land is held open to the public." Goode, 494 S.E.2d at 831. A business visitor, on the other hand, is an invitee whose purpose for being on the property is directly or indirectly connected with business dealings with the owner. Id.; see also Parker v. Stevenson Oil Co., 140 S.E.2d 177, 179 (S.C. 1965) (the term "invitee" in premises liability cases usually means the same thing as a business visitor and refers to one who enters upon the premises of another at the express or implied invitation of the occupant, especially when he is there about a matter of mutual interest or advantage); Hoover v. Broome, 479 S.E.2d 62, 65 (S.C. Ct. App. 1996) ("Business visitors are considered invitees as long as their purpose for entering the property is either directly or indirectly connected with the purpose for which the property owner uses the land.").

    4.    Premises Liability

The landowner is not required to maintain the premises in such condition that no accident could happen to a patron using them. See Denton v. Winn-Dixie Greenville, Inc., 439 S.E.2d 292, 293 (S.C. 1993). Under South Carolina law, the owner of property owes business visitors or invitees the duty of exercising reasonable and ordinary care for their safety and is liable for any injuries resulting from a breach of such duty. H.P. Larimore v. Carolina Power & Light, 531 S.E.2d 535, 538 (S.C. Ct. App. 2000) (citing Israel v. Carolina Bar-B-Que, Inc., 356 S.E.2d 123,

128 (S.C. Ct. App. 1987)). The landowner has a duty to warn an invitee only of latent or hidden dangers of which the landowner is on actual or constructive notice. H.P. Larimore, 531 S.E.2d at 538 (citing Callander v. Charleston Doughnut Corp., 406 S.E.2d 361, 362-63 (S.C. 1991)). To recover damages for injuries caused by a dangerous or defective condition on a landowner's premises, a plaintiff must show that (1) the injury was caused by a specific act of the defendant which created the dangerous condition, or (2) that the defendant had actual or constructive knowledge of the dangerous condition and failed to remedy it. Wintersteen v. Food Lion, Inc., 542 S.E.2d 728, 729 (S.C. 2001) (citing Anderson v. Racetrac Petroleum, Inc., 371 S.E.2d 530 (S.C. 1988)); Pennington v. Zayre Corp., 165 S.E.2d 695 (S.C. 1969); Hunter v. Dixie Home Stores, 101 S.E.2d 262 (S.C. 1957).

"The entire basis of an invitor's liability rests upon his superior knowledge of the danger that causes the invitee's injuries. If that superior knowledge is lacking, as when the danger is obvious, the invitor cannot be held liable." H.P. Larimore, 531 S.E.2d at 540. A landowner is not liable for open and obvious dangers unless the landowner "should anticipate the harm despite such knowledge or obviousness" or "has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, . . . or fail to protect himself against it." Callander, 406 S.E.2d at 362-63 (S.C. 1991) (internal quotation marks omitted) (alteration in original).

**B.    Analysis**

    1.    Dangerous or Defective Condition

As an invitee at Carowinds, Plaintiff alleges she fell and was injured because of two dangerous conditions: (1) an elevated concrete pad jutting into the walkway; and (2) a pothole in the pavement adjacent to the platform. (ECF No. 27, p. 2 (citing (ECF No. 27-2, pp. 48-49).)

### a.   *The elevated concrete pad*

In their motion for summary judgment, Defendants assert that the change in elevation between the concrete pad and the surrounding asphalt was not a dangerous or defective condition. (ECF No. 26, p. 8.) In support of their assertion, Defendants specify that the area of the walkway where Plaintiff fell was very wide at the location of the accident and offered ample room for patrons to walk. (ECF No. 30, p. 1 (citing ECF Nos. 30-1; 30-2).) In this regard, Defendants argue that the concrete pad was not in an area that an invitee would have any reason to encounter if using the normal, designated path through the park. (Id. at p. 1.) Defendants further argue that the walkway encourages patrons to walk near the concrete pad and ATM only if they have to use the ATM. (Id.) Therefore, Defendants argue that in order to come into contact with the concrete pad at issue, a patron would have to deliberately change direction and walk directly into the ATM that rests on the pad. (Id.)

Defendants also assert that there is no evidence in the record of any other falls or similar incidents regarding the elevated concrete pad. (See ECF No. 27-2, pp. 66-67.) Defendants argue instead that Plaintiff was not paying attention to where she was walking, and that her inattention caused her fall. (ECF No. 26, p. 8 (citing ECF No. 27-2, pp. 89, 96).) Based on the foregoing, Defendants believe that Plaintiff has failed to present any evidence that the elevated concrete pad at issue was a dangerous or defective condition. (Id.)

In support of her claims, Plaintiff asserts that the elevated concrete pad protruded into the walkway; and a person walking on the right side of the walkway would encounter the raised concrete pad in their path. (ECF No. 27, p. 3 (citing ECF No. 27-1).) As such, Plaintiff argues that by configuring the grounds at Carowinds in this way, Defendants encouraged patrons to walk into a dangerous condition. (Id.) Plaintiff further argues that the pertinent question is

whether a reasonably careful person would expect a change in elevation during the course of a walkway that was not close to a building.[2]  (Id.)

   b.   *The pothole*

Defendants assert that Plaintiff failed to mention the pothole in her amended complaint and has not produced any photographic evidence of it.  (ECF No. 30, p. 4 (citing ECF No. 1-1).)  Defendants further assert that there is no evidence regarding how the pothole came to be in the walkway; that they were aware of it before Plaintiff fell; or that any other guests saw the hole, fell as a result of the hole, or brought the hole to the attention of employees at Carowinds.  (ECF Nos. 26, pp. 9-10; 30, p. 4.)  Therefore, Defendants argue that Plaintiff has failed to present evidence that the pothole was a dangerous condition.  (Id.)

Notwithstanding the failure to reference a hole in her amended complaint, Plaintiff asserts that she has presented evidence that the pothole was present at the time she fell.  (ECF No. 27, p. 4.)  Specifically, Plaintiff provided her own testimony and the testimony of Marsha Ann Poteat, a companion of Plaintiff on the date of the accident, who testified that she saw a "golf ball size" or "egg size" hole two to three inches deep after the fall.  (Id. (citing ECF Nos. 27-2, p. 49; 27-3, pp. 1-2).)  Plaintiff further asserts that the hole was documented on first aid and work order forms generated by employees at Carowinds in direct response to Plaintiff's fall.  (ECF No. 27-5, p. 5 (citing to ECF Nos. 27-4; 27-5, pp. 1-2; 27-6).)

   2.   <u>Open and Obvious Condition and the Anticipation of the Danger</u>

Defendants assert that the elevated concrete pad was open and obvious, and was not placed in an area where patrons, following the designated walkway, would have any reason to

---

[2] Plaintiff testified that the difference in elevation between the asphalt and the protruding pad was not visible as she approached.  (ECF No. 27, p. 4 (citing ECF No. 27-2, p. 96).)

come into contact with it. (ECF No. 30, p. 4.) In support of their assertion, Defendants directed the court's attention to photographic evidence showing that the elevated concrete pad was a different color than the surrounding asphalt and was not obscured by grass or other foliage. (ECF No. 30, p. 2 (citing ECF Nos. ECF No. 27-1; 27-2, p. 94.) In addition, Defendants called the court's attention to the fact that a large, cylindrical, bright green ATM rested directly on the pad. (Id.) In this regard, Defendants contend that they could not have anticipated the danger caused by the elevated concrete pad or the pothole. (Id. at p. 2.) They point to the lack of evidence in the record of other falls or complaints regarding the concrete pad or the pothole. (Id.) As such, Defendants contend that the only basis on which Plaintiff characterizes these conditions as dangerous is because she fell. (Id.)

Plaintiff does not concede that the concrete pad or pothole were open and obvious hazards. (ECF No. 27, 9.) Instead, Plaintiff argues that even if the concrete pad and/or pothole were open and obvious conditions, Defendants should have anticipated that their invitees may be distracted and taken reasonable action to prevent the harm posed by the dangerous conditions. (Id. at p. 27.) Specifically, Plaintiff asserts that Carowinds, as an amusement park, is a location where patrons are likely to be distracted from watching where they walk. (ECF No. 27, p. 9.) Moreover, Carowinds creates and promotes attractions, such as stores, rides, and games, which are meant to be attractive to the eye. (Id. at pp. 9-10.) Therefore, Plaintiff argues that an amusement park is certain to distract its patrons, and Defendants should have anticipated that its invitees may be distracted and taken reasonable action to prevent the harm posed by the dangerous conditions. (Id. at p. 28 (citing Callander, 406 S.E.2d at 362).)

9

### 3. The Court's Review

For a plaintiff to prove her claim for premises liability negligence, she has to establish the existence of a defective or dangerous condition. The evidence presented by the parties establishes that the difference in elevation between the concrete pad and the walkway was reasonably apparent to one exercising due care for their own safety. In this regard, the facts of this case differ from cases cited wherein the condition causing a fall was not reasonably apparent to the complainant.

For example, in <u>Bruno v. Pendleton Realty Co.</u>, the plaintiff tripped on a raised sidewalk at the point that the sidewalk joined a walkway that was on a different level. <u>Bruno v. Pendleton Realty Co.</u>, 124 S.E.2d 580, 581 (S.C. 1962). The court in <u>Bruno</u> found that a jury issue was presented as to whether or not a dangerous condition existed where overgrown grass had concealed the edge of the sidewalk where it joined the walkway, giving the appearance that the sidewalk and walkway were on the same level. <u>Id.</u> at 582 ("The mere fact that there is a difference between the levels in the different parts of the premises does not, in itself, indicate negligence unless, owing to the character, location and surrounding condition of the change of level, a reasonably careful person would not be likely to expect or see it.") (citation omitted). Additionally, in <u>O'Leary-Payne v. R.R. Hilton Head, II, Inc.</u>, a plaintiff survived summary judgment by presenting evidence that while walking on a dimly lit sidewalk at dusk, she tripped over a rod protruding out of a sidewalk. <u>O'Leary-Payne v. R.R. Hilton Head, II, Inc.</u>, 638 S.E.2d 96, 98 (S.C. Ct. App. 2006).

Unlike the complainants in <u>Bruno</u> and <u>O'Leary</u>, Plaintiff, who was "coming up around the corner and not paying - - and looking ahead," was walking on a "beautiful, sunny day" and tripped over an elevated concrete pad, which pad was not obscured by darkness or alleged to

have been covered by foliage or any other material concealing it from view.  (See ECF No. 27-2, pp. 46-7, 89, 96.)  Moreover, the evidence in the record does not support the conclusion that Plaintiff would have fallen just by stepping into the alleged pothole.  Therefore, upon the court's review, Plaintiff has failed to present sufficient evidence to create an issue of fact as to whether the elevated concrete pad and pothole, either individually or collectively, were dangerous or defective conditions.  Accordingly, the court agrees with Defendants that Plaintiff has not presented evidence of a dangerous or defective condition to survive summary judgment on her claim for premises liability negligence.

As this court finds that Plaintiff cannot establish the existence of a dangerous or defective condition, it is unnecessary to address Defendants' remaining arguments in support of summary judgment.

### III.   CONCLUSION

Based on the foregoing, the court hereby **GRANTS** Defendants' motion for summary judgment.  (ECF No. 26.)

**IT IS SO ORDERED**.

/s/Margaret B. Seymour  
MARGARET B. SEYMOUR  
CHIEF UNITED STATES DISTRICT JUDGE

October 26, 2012  
Columbia, South Carolina